In the Matter of the Compensation of
Robert K. Schiller, Claimant.

SAIF CORPORATION
and Robert E. Jensen,
*Petitioners,*

*v.*

Robert K. SCHILLER,
*Respondent.*

(95-05299; CA A92914)

947 P2d 1128

David L. Runner argued the cause and filed the brief for petitioners.

J. Michael Casey argued the cause and filed the brief for respondent.

Before Deits, Chief Judge, and De Muniz and Haselton, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

SAIF Corporation seeks review of an order of the Workers' Compensation Board (Board) reclassifying claimant's injury from nondisabling to disabling. We review for errors of law and substantial evidence, ORS 656.298(6); ORS 183.482(7) and (8), and affirm.

On March 29, 1994, claimant suffered a right hip strain when he tripped over a wood pallet. On April 11, 1994, claimant saw his attending physician, Dr. Peterson, for related treatment. Peterson diagnosed claimant's injury as a "sacroiliac strain," but recommended that claimant "continue on regular work duty." On April 28, 1994, SAIF accepted the claim as nondisabling.[1] On August 8, 1994, Dr. Roy, an associate of Peterson, reevaluated claimant, declaring claimant medically stationary[2] and noting that he had right thigh numbness and had lost some active flexion of his right hip. Roy described the conditions as symptomatic and noted that "the conditions will probably stay as they are." After experiencing a recurrence of symptoms, claimant sought chiropractic treatment and then, on September 21, 1994, again saw Peterson. Peterson rechecked claimant and reported that the chiropractic treatment had resolved "his immediate problem," also noting that claimant had full hip range of motion and full muscle strength and sensation in both legs. On May 15, 1995, Peterson again saw claimant for a recurrence of the right hip strain, reporting that while "[c]hiropractic treatment does give him short term relief, * * * the condition keeps reoccurring." On July 7, 1995, Peterson signed a report in which he agreed that there was a reasonable expectation that permanent disability would result from claimant's sacroiliac strain based on the chronicity of his symptoms. On July 13, 1995, Peterson signed an additional report indicating that this expectation was present at claimant's examination on August 8, 1994.[3]

---

[1] A "nondisabling compensable injury" is one that requires only medical services. ORS 656.005(7)(d).

[2] "Medically stationary" means that claimant's condition is not reasonably expected to improve with additional medical treatment or the passage of time. ORS 656.005(17).

[3] ORS 656.277(1) imposes a one-year limit on reclassification requests. We note that there is no dispute regarding whether claimant's request meets this limitation.

In January 1995, claimant began a series of statutorily prescribed processes to have his claim reclassified. *See* ORS 656.262(6)(b)(C); ORS 656.268(11); ORS 656.277. Claimant first submitted his request to SAIF, then to the Department of Consumer and Business (DCBS) for review and reconsideration, next to a hearings officer and ultimately to the Board for review. The Board ordered SAIF to reclassify the claim as disabling.

At the hearing, claimant introduced Peterson's July 7 and July 13 reports. Although claimant had not produced either report at the reconsideration, SAIF did not object to their admission. The administrative law judge (ALJ) considered the reports in his decision but nevertheless denied claimant's request, concluding that claimant had failed to establish a reasonable expectation of a ratable permanent disability sufficient to justify classifying the claim as disabling. The Board reversed the ALJ's order, finding that Peterson's July 7 and July 13 reports, while "rather cursory, in the absence of any evidence to the contrary, * * * [were] sufficient to establish a reasonable expectation that permanent disability [would] result from claimant's injury." The Board relied on ORS 656.005(7)(c), which provides:

> "A 'disabling compensable injury' is an injury which entitles the worker to compensation for disability or death. An injury is not disabling if no temporary benefits are due and payable, unless there is a reasonable expectation that permanent disability will result from the injury."

In its first three assignments of error, SAIF contends that: (1) the Board "misconstrued the expression 'permanent disability' in ORS 656.005(7)(c) by failing to require proof of an impairment that would constitute a ratable 'permanent disability' under the department's disability standards"; (2) the Board improperly shifted the burden of proof when it concluded "that claimant's claim was disabling 'in the absence of any evidence to the contrary' "; and (3) "[s]ubstantial evidence does not support a finding that there is a reasonable expectation that 'permanent disability' will result from the compensable injury within the meaning of ORS 656.005(7)(c)." We disagree with each of SAIF's contentions.

We review the first assignment of error to determine whether the Board correctly interpreted the statute. ORS

183.482(8). Specifically, we must determine whether the legislature intended in ORS 656.005(7)(c) to require proof of the existence of a specific, ratable impairment in order to reclassify a claim from nondisabling to disabling.

■ We interpret a statute by examining its text and context. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). A statute's context includes other provisions of the same statute and other related statutes. *Id.* at 611. The "reasonable expectation" provision in ORS 656.005(7)(c) provides that in a situation where, as here, a claimant suffers an on-the-job injury but experiences no time loss as a result, the injury is not disabling "unless there is a reasonable expectation that permanent disability will result from the injury." The phrase "reasonable expectation" unambiguously refers to a condition that has not yet occurred.

The condition, *i.e.*, "permanent disability," is a term defined elsewhere in the statutes and rules comprising the Workers' Compensation Law. *See generally* ORS 656.206 and ORS 656.214; OAR chapter 436, division 35. Those provisions designate an exclusive set of impairments for compensability and rate the various impairments for compensation levels.

When considered together, the text and context show that the "reasonable expectation" provision requires an evidentiary link between the actual, current condition and a potential, statutorily defined condition. That evidentiary burden does not, however, require evidence of a specific and actual impairment as defined by statute or rule, because under the "reasonable expectation" provision, which concerns an event that has not yet occurred, that kind of proof does not yet exist.[4]

Moreover, to read the "reasonable expectation" provision to require, as SAIF contends, proof of a condition presently "ratable as a 'permanent condition' under the Department's disability standards," would render the "reasonable

---

[4] SAIF argues that, because claimant was considered medically stationary before his reclassification request, he should be required to prove at the reclassification phase his injury's rating under the DCBS's disability standards. We disagree, noting simply that the determination of an injury's rating, which occurs at claim closure, and the classification procedure, which occurs at claim acceptance, are distinct processes. *See* ORS 656.262; ORS 656.268.

expectation" phrase meaningless. We are obligated to avoid such a result. ORS 174.010 ("[W]here there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all.").

■     Accordingly, we hold that the Board properly interpreted ORS 656.005(7)(c) to require proof of a current condition that could lead to a ratable impairment under the DCBS's impairment standards, not proof of a condition presently ratable under the standards, in order to reclassify a claim from nondisabling to disabling.[5]

■     In its second assignment of error, SAIF contends that the Board improperly shifted the burden of proof to SAIF when the Board stated that "claimant's claim was disabling in the absence of any evidence to the contrary." We disagree. Claimant has the burden of proving that a claim is misclassified. ORS 656.266; *see Normandeau v. Aetna Casualty & Surety Co.*, 120 Or App 184, 187, 852 P2d 217 (1993). Here, claimant's evidence included his relevant medical history and two reports from his attending physician, Peterson, in which Peterson opined that there was a reasonable expectation that permanent disability would result from claimant's injury. SAIF, on the other hand, produced nothing. Consequently, because claimant produced evidence, the Board did not base its findings solely on the lack of contrary proof and, thus, did not reach its conclusion through improper burden shifting. Rather, the Board simply recognized the state of the evidentiary record. There was no error.

■     In SAIF's third assignment of error, it argues that substantial evidence does not support a finding that there is a reasonable expectation that permanent disability will result from claimant's injury. Substantial evidence supports a finding when the record, viewed as a whole, permits a

---

[5] At oral argument, SAIF contended that the Board did not apply its own administrative rule—OAR 436-030-0045(9)—when deciding this case and therefore erred. SAIF also submitted a memorandum of additional authorities to support its contention. Because SAIF did not make that argument to the Board and did not assign error to it, we decline to consider it. *Saxton v. SAIF*, 80 Or App 631, 634, 723 P2d 355, *rev den* 302 Or 159 (1986).

reasonable person to make the finding. *Garcia v. Boise Cascade Corp.*, 309 Or 292, 295, 787 P2d 884 (1990); *Armstrong v. Asten-Hill Co.*, 90 Or App 200, 206, 752 P2d 312 (1988).

■     Here, the Board had before it uncontradicted and credible medical evidence submitted by claimant that his hip strain was reasonably expected to result in a permanent disability. Moreover, because a loss of internal rotation of the hip is a condition recognized by the DCBS's disability standards, the necessary evidentiary link was present. *See* OAR 436-35-340(10). Because this evidence was uncontradicted and credible, a reasonable person could conclude from the totality of the evidence presented that claimant's injury was likely to result in a permanent disability. Accordingly, we hold that substantial evidence supports the Board's finding.

■     In SAIF's fourth assignment of error, it contends that the Board improperly based its decision on evidence not admissible under ORS 656.283(7)[6] when it considered Peterson's July 7 and July 13 reports, which claimant did not produce until after the reconsideration.

SAIF's evidentiary argument was not raised at the hearing before the ALJ, nor was it raised in SAIF's brief to the Board, nor did the Board address that evidentiary issue on its own motion. The argument did not surface until judicial review to this court. Because this argument was not preserved, we do not address it.[7] OEC 103(1); *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 823 P2d 956 (1991) (court may not consider issues not raised by parties); *SAIF v. Yokum*, 132 Or App 18, 22, 887 P2d 380 (1994) (court concluded implicitly that it has jurisdiction over only those issues preserved before the Board); *McCarter v. Crown Zellerbach*, 45

---

[6] ORS 656.283(7) provides, in part:

"Evidence on an issue regarding a notice of closure or determination order that was not submitted at the reconsideration required by ORS 656.268 is not admissible at hearing[.]"

[7] In *Fister v. South Hills Health Care*, 149 Or App 214, 942 P2d 833 (1997), we had occasion to address a similar issue. There, we held that, despite the statutory bar contained in ORS 656.283(7), "[b]ecause employer did not object to claimant's testimony at hearing, the Board should not have entertained employer's argument, first made to the Board, that the evidence was inadmissible." *Id.* at 219.

Or App 905, 609 P2d 435 (1980) (a party must preserve error at the hearing in order for the Board to consider issue).

Affirmed.