Argued and submitted June 14, 1999, reversed and remanded November 22, 2000

In the Matter of the Compensation of
Patrick J. Callow, Claimant.

MARVIN WOOD PRODUCTS
and Liberty Mutual Insurance,
*Petitioners,*

*v.*

Patrick J. CALLOW,
*Respondent.*

(WCB 97-08869; CA A103651)

14 P3d 686

Vera Langer argued the cause for petitioners. With her on the brief was Scheminske, Lyons & Bussman, LLP.

Clayton C. Patrick argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LINDER, J.

**LINDER, J.**

Employer seeks review of a Workers' Compensation Board (Board) order, seeking to decrease the amount of scheduled permanent partial disability awarded by the Board. On review, employer argues that the Board erroneously assigned it the burden of proof on the extent of claimant's permanent partial disability. Employer also asserts that the Board erroneously rated claimant's disability based on the medical arbiters' findings, even though the medical arbiters expressly reported those findings to be invalid.[1] For the reasons that we explain below, we reverse and remand for further proceedings.

The facts relevant to our review are primarily procedural in nature. Employer accepted claimant's claim for bilateral carpal tunnel syndrome and tendonitis in claimant's wrists and forearms. Upon claim closure, the Department of Consumer and Business Services (DCBS) awarded claimant five percent permanent partial disability for loss of use of each wrist and forearm due to chronic pain. Claimant sought reconsideration by the Appellate Review Unit (ARU) of DCBS, asserting that the disability rating should be based on lost range of motion, lost sensation, and lost strength, in addition to chronic pain. Because employer requested an examination by a three-physician arbiter panel, the record on reconsideration consisted of the report of the arbiter panel, as well as a report by claimant's attending physician, Dr. Warren.

Warren's report concluded that claimant had full range of motion in his wrists but was permanently limited in his ability to perform activities requiring repetitive use of his hands and wrists. Contrary to Warren's report, the medical arbiters made findings that claimant's injury resulted in reduced range of motion in his wrists. Significantly, however, the arbiters also reported that "the panel finds the examination to be invalid." As a result, the arbiters were "unable to set any limitations on the [claimant's] repetitive ability to use

---

[1] Employer also asserts that the Board's extent of disability determination is not supported by substantial evidence. Because of our disposition of the case, we do not reach that contention.

either hand, wrist, or forearm due to the diagnosed chronic and permanent medical condition arising out of the accepted injury." The arbiters did not explain why they found their examination to be invalid.

In the order on reconsideration, the ARU rated claimant's disability using Warren's findings that claimant is limited in his ability to use his hands and wrists repetitively. The ARU also used the arbiters' range of motion findings, noting that, although the arbiter panel found its examination to be invalid, it had not explained that finding. Consequently, the ARU's order on reconsideration increased claimant's scheduled permanent disability award to nine percent for the right wrist and 11 percent for the left wrist.

Employer requested a hearing to challenge the increased disability award. The administrative law judge (ALJ) affirmed the ARU's order on reconsideration, and employer sought further review by the Board. The Board affirmed the ALJ's order, largely adopting that order. Employer then sought reconsideration by the Board, which the Board granted. On reconsideration, the Board clarified its decision in certain respects, but it adhered to the increased disability rating determined by the ARU and affirmed by the ALJ.

In its first assignment of error, employer argues that the Board improperly placed the burden of proof on it to establish the extent of claimant's disability. Specifically, employer cites the following portion of the Board's order as impermissibly shifting the burden of proof in the proceeding:

"[W]e note that this matter involves a request for hearing filed by the insurer to challenge the additional award of permanent disability granted to claimant by the Order on Reconsideration. Claimant did not seek an increased award. Under such circumstances, we have previously held that the employer has the burden of proving that claimant's permanent disability award should be reduced. *See Roberto Rodriguez*, 46 Van Natta 1723 (1994)[.]"

Employer argues that, "[i]n an initial claim for disability compensation, the injured worker has, at all levels of adjudication of that claim, the burden to prove the nature and extent of disability." Claimant takes issue with the premise

of employer's argument—*i.e.*, that the burden of proof on the extent of disability is on claimant throughout all levels of the adjudication of his initial claim for disability compensation. Rather, according to claimant, that burden shifts to the employer when it is the employer, rather than the injured worker, that seeks further review of the disability award. Although we affirm the Board on that point, we write to clarify the role of burden of proof in proceedings of this kind.

■■ As both parties acknowledge, ORS 656.266 places the "burden of proving" the compensability of an injury, together with "the nature and extent of any disability resulting therefrom," on an injured worker. The purpose of the burden of proof in that regard is the same as in other legal contexts: to allocate the risk of nonpersuasion. In effect, assignment of the burden of proof is a way to declare which party loses if the evidence on an issue appears to be equally balanced or if the factfinder cannot say upon which side the evidence weighs more heavily. *See generally Riley Hill General Contractor v. Tandy Corp.*, 303 Or 390, 394-95, 737 P2d 595 (1987) (discussing meaning of burden of proof where burden must be satisfied by preponderance of evidence); *Russell v. Ford Motor Company*, 281 Or 587, 596-97, 575 P2d 1383 (1978) (same). Conceptually, the burden of proof encompasses two distinct burdens: the burden of producing evidence of a particular fact (*i.e.*, the burden of production), and the burden of convincing the trier of fact that the alleged fact is true (*i.e.*, the burden of persuasion). *See generally* McCormick, 2 *Evidence* § 336 at 425 (4th ed 1992).[2]

■■ Logically, the allocation of the burden of proof has its greatest relevance at the stage of the proceeding in which the record is developed and a factfinder initially resolves the

---

[2] As noted in *State v. Rainey*, 298 Or 459, 464 n 6, 693 P2d 635 (1985), the term "burden of proof" is outmoded for purposes of the Oregon Evidence Code. There, it has been replaced with the more precise concepts of "burden of production" and "burden of persuasion." *See, e.g.*, OEC 305 ("A party has the burden of persuasion as to each fact the existence or nonexistence of which the law declares essential to the claim for relief or defense the party is asserting."); OEC 307(2) ("The burden of producing evidence as to a particular issue is initially on the party with the burden of persuasion as to that issue.").

issues in dispute. At that stage, the failure to produce evidence at all, or the failure of the evidence produced to persuade the factfinder, will be fatal to the party with the burden of proof. But at subsequent levels of review, the significance of the burden of proof depends on the nature of the review to be performed. If review is *de novo*—in which case the reviewing body has license to reweigh the facts and reassess the persuasive force of the evidence[3]—the risk of nonpersuasion (and, hence, the burden of proof) potentially can remain a factor in determining which party prevails. When review is not *de novo*, however, the only factual review performed is for the *sufficiency* of evidence pursuant to a standard that essentially tests whether a rational or reasonable factfinder could have been persuaded by the evidence; the reviewing body does not weigh the evidence anew or otherwise decide whether to reach the same result as the initial factfinder.[4] In such a case, no burden remains on the party to *persuade* the reviewing body of the truth of the factual evidence produced, and neither party can be said to bear the risk of factual nonpersuasion in the same way that the risk is borne at the factfinding level.

■■■■ Review of a disability-extent determination at a hearing before an ALJ and on review before the Board is *de novo. See generally* ORS 656.283(7) (ALJ hearing); ORS 656.295(5) (Board review). We therefore agree with employer that, as a general proposition, claimant retains the burden of proof on the nature and extent of disability at the level of Board review. *SAIF v. Schiller*, 151 Or App 58, 63, 947 P2d 1128 (1997), *rev den* 326 Or 389 (1998) (claimant continues to

---

[3] *See, e.g., Hannan v. Good Samaritan Hosp.*, 4 Or App 178, 471 P2d 831 (1970) (*de novo* review is a trial anew in the fullest sense, with the findings of the lower tribunal being given no weight except on issues of credibility).

[4] Standards for reviewing evidence for sufficiency vary slightly by context but are similar in their formulation. *See, e.g.,* ORS 183.482(8)(c) (factfinding by administrative agency is reviewed for substantial evidence; substantial evidence supports a finding when the record, viewed as a whole, permits a reasonable person to make the finding); *Illingworth v. Bushong*, 297 Or 675, 694, 688 P2d 379 (1984) (to set aside civil verdict, reviewing court must be able to conclude affirmatively that no evidence supports jury's determination of the facts); *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den* 514 US 1005 (1995) (evidence to support criminal conviction is viewed in the light most favorable to the state to determine whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt).

have burden at Board level to prove that claim is disabling). Thus, if the issues raised by the party seeking an ALJ hearing and Board review trigger the need to review the factual evidence for its weight, the injured worker retains the burden of proof in the sense that, if the ALJ or the Board finds the evidence to be equally balanced and is unable to say upon which side it weighs heavier, the injured worker bears the consequences of nonpersuasion. Indeed, that is how the Board has resolved disputes over extent of disability when the issues have called on the Board to weigh the evidence and the Board has found the evidence equally balanced or simply unpersuasive. *See, e.g., Raymond T. Cox, Jr.,* 47 Van Natta 1628 (1995) (on insurer's request for review, Board modified award of permanent disability, concluding that evidence on certain issues was in equipoise and that claimant therefore did not carry burden of proof); *see also Cynthia R. Deronden-Pos,* 51 Van Natta 1517 (1999) (on insurer's request for review of ALJ's conclusion that condition was compensable, Board reversed, finding the medical evidence "at best, to be in equipoise" and that claimant therefore did not carry her burden of proof).[5]

■     Here, however, we do not understand the Board to have assigned the burden of proof to employer in that sense. Citing its earlier decision in *Roberto Rodriguez,* 46 Van Natta 1722 (1994), the Board observed that claimant had not sought the ALJ hearing and later Board review; rather,

---

[5] In practical terms, the likelihood of the medical evidence being in "equipoise" at the Board's level of review on a dispute over extent of disability is not great. By then, at least the claimant will have provided a medical opinion on the extent of disability. The ordinary case pursued to the Board level may also entail a medical arbiter report, prepared in the course of reconsideration by DCBS, as well as possible competing medical evidence submitted by the employer. On a fully developed record where the dispute is extent of disability, the question for the Board on *de novo* review most often will reduce to which of the medical opinions the Board finds most persuasive. As a matter only of its *de novo* review, the Board would then rate the disability accordingly. Whether the Board in fact does so may depend on other factors, such as what arguments and issues the parties have raised and preserved for the Board's review. *See, e.g., Patricia J. Lei,* 1994 WL 382599 (1994) (ALJ, who erred in finding that claim was closed prematurely, did not reach claimant's argument in favor of increasing disability award; because the record was adequately developed for review, Board reached and decided the issue in the first instance, concluding that claimant's evidence supported a *lower* extent rating than awarded in the order on reconsideration; Board did not reduce award, however, because employer had not preserved the issue).

employer had pursued further review at both levels seeking to have the disability award decreased. In the Board's view, employer, as the party seeking affirmative relief in the form of a modified disability rating, bore the burden of "proving" the basis for the modification. Requiring employer to bear that burden is consistent with ORS 656.283(7), which provides, in part:

> "Evidence on an issue regarding a notice of closure that was not submitted at the reconsideration required by ORS 656.268 is not admissible at hearing, and issues that were not raised by a party to the reconsideration may not be raised at hearing unless the issue arises out of the reconsideration order itself. However, *nothing in this section shall be construed to prevent or limit the right of a worker, insurer or self-insured employer to present the reconsideration record at hearing to establish by a preponderance of that evidence that the standards adopted pursuant to ORS 656.726 for evaluation of the worker's permanent disability were incorrectly applied* in the reconsideration order pursuant to ORS 656.268."[6]

(Emphasis added.) *See Rodriguez,* 46 Van Natta at 1723-24 (relying on ORS 656.283(7) (1990), to conclude that the party requesting a hearing has the burden to establish that standards for evaluating disability were incorrectly applied).

The language "establish by a preponderance of that evidence" is a holdover from the pre-1995 versions of the statute, which permitted new issues to be raised and new evidence to be considered at the ALJ hearing as well as before the Board. *See* ORS 656.283(7) (1965, 1979, 1981, 1985, 1987, 1990); *see generally Rogue Valley Medical Center v. McClearen,* 152 Or App 239, 244-46, 952 P2d 1048, *rev den*

---

[6] The same language appears in substantially the same form in the statute governing Board review of the ALJ's order:

> "* * * The board shall apply to the review of the claim such standards for the evaluation of disability as may be adopted by the Director of the Department of Consumer and Business Services pursuant to ORS 656.726. *Nothing in this section shall be construed to prevent or limit the right of a worker, insurer or self-insured employer to present evidence to establish by a preponderance of the evidence that the standards adopted pursuant to ORS 656.726 for evaluation of the worker's permanent disability were incorrectly applied in the reconsideration order pursuant to ORS 656.268.*"

ORS 656.295(5) (emphasis added).

327 Or 123 (1998) (discussing significance of 1995 amendment to statute). Under the current statutory scheme, however, the hearing before the ALJ is on the reconsideration record made before DCBS and is limited to the issues raised on reconsideration. The record may be supplemented only with a medical arbiter report that was not prepared in time for use in the reconsideration process, ORS 656.268(6)(f), and the issues may be expanded only to consider those "aris[ing] out of the reconsideration order itself." ORS 656.283(7).

**10.** Given the procedural changes brought about in 1995, characterizing the dissatisfied party's burden under the statute as one of "proof" seems off-mark. Apart from possibly supplementing the record with a medical arbiter report, the statute no longer contemplates that a party seeking Board review of a disability award has the ability to introduce new "evidence" showing that the standards were misapplied. Necessarily, then, no burden to convince the factfinder of the "truth" of that new evidence falls on that party. To be sure, the statutes effectively place a burden on the party seeking hearing or review by requiring that party to produce the record made at reconsideration, to identify in what ways the standards for rating the disability were misapplied, and to persuade the reviewing body of the correctness of that proposition. Given the procedural scheme, the statute's reference to the party's obligation to establish that the standards were misapplied "by a preponderance of the evidence" means only that the record made at reconsideration must persuade the ALJ or the Board that there was an error in the disability award. If the evidence does not favor that conclusion—that is, if the ALJ or the Board is not persuaded that there was an error—the party seeking review loses.

Such a requirement is not a "burden of proof" in the true sense of the term (*i.e.*, a burden to produce evidence of a fact and then to persuade the factfinder of the truth of the fact). More accurately, it is a burden of establishing error in the prior resolution. Like a burden of proof, the burden to establish error has two components: first, a burden of going forward by proposing in what way the determination below is erroneous; second, a burden of establishing the correctness of that proposition. Thus, the "burden" on the dissatisfied party

is one traditional to the adversarial process: The party seeking affirmative relief on appeal or review must identify an error in the decision and must do so persuasively. Ordinarily, the party who prevailed at an initial level of adjudication is entitled to rest on that resolution unless and until the opposing party, in a procedurally proper way, seeks review and persuades the reviewing body that the prior resolution should be modified or reversed. Thus, for example, in appeals to this court, *de novo* review does not obviate the necessity for a cross-appeal,[7] for making precise assignments and cross-assignments of error,[8] or for preserving issues in the prior proceedings.[9] All of those requirements are ways in which, notwithstanding the burden of proof on the underlying merits of an issue, the party seeking affirmative relief after an initial resolution of the merits must persuasively identify the basis for that relief.

Thus, we reject the premise of employer's argument that assigning employer the burden of establishing error in the application of the standards for evaluation of claimant's disability is inconsistent with claimant's burden of *proving*, under ORS 656.266, the nature and extent of his disability. ORS 656.283(7) merely describes the burden of a party seeking to challenge *DCBS's application of its own standards* after DCBS has determined what amount of disability, if any, to award the injured worker. Requiring the party seeking review to demonstrate persuasively that the standards for

---

[7] *See Booras v. Uyeda*, 295 Or 181, 188-89, 666 P2d 791 (1983) (even on *de novo* review court will not re-examine aspects of decree that are allegedly erroneous and prejudicial to respondent without a cross-appeal).

[8] Before 1982, assignments of error were not required in equitable appeals. *See former* ORAP 7.20 *(repealed* 1982). Even so, the appealing party had the burden to identify the issues for appeal and to make appropriate references to the record in support the issues raised. *See generally Tidewater v. Wheeler*, 55 Or App 497, 502 n 2, 638 P2d 499, *rev den* 292 Or 722 (1982). Since 1982, the appealing party in a case reviewed *de novo* must assign error, set forth the pertinent portions of the record, and otherwise carry the burden of identifying claims of error. *See* ORAP 5.45 (assignments of error and supporting argument required in all opening briefs).

[9] *See Duncan v. Liberty Northwest Ins. Corp.*, 133 Or App 605, 610-11, 894 P2d 477 (1995) (party seeking review of disability award must have raised objections to the award at reconsideration); *Gunther H. Jacobi*, 41 Van Natta 1031 (1989) (Board does not consider issues on *de novo* review that were not raised at hearing before ALJ). *See generally Westendorf and Westendorf*, 165 Or App 175, 178, 996 P2d 523 (2000) (fact that case is subject to *de novo* review does not mean that the preservation rule applies with any less force than in other cases).

rating disability were misapplied merely places on the dissatisfied party the same obligation that falls on any party seeking affirmative relief on review or appeal: the obligation to propose the basis on which that relief should be awarded and then to establish the correctness of that proposition. The Board's order in this case assigned no other burden to employer and was not error.

We turn to employer's second assignment of error, in which employer challenges whether the ALJ and the Board could rely on the arbiter panel's lost range of motion measurements given the panel's unexplained finding that its examination was invalid. At the time the disability award in this case was made, *former* OAR 436-035-0007(27) (1996) applied. It provided, in part:

> "Validity shall be established for findings of impairment according to the criterion noted in the **AMA Guides to the Evaluation of Permanent Impairment, 3rd Ed., Rev., 1990** * * *. *Upon examination, findings of impairment which are determined to be ratable pursuant to these rules shall be rated unless the physician determines the findings are invalid and provides a written opinion, based on sound medical principles, explaining why the findings are invalid.* When findings are determined invalid, the findings shall receive a value of zero."[10]

(Emphasis added; boldface in original.) Both the parties and the Board assumed below, as the parties do on appeal, that the rule mandates consideration of the arbiter panel's impairment findings despite the finding that the examination was invalid, if the invalidity is not adequately explained. Employer thus asserts that, insofar as the rule does mandate ratings on such findings, the rule conflicts with the ALJ's and the Board's obligations to weigh the persuasiveness of the evidence. Employer further argues that, as a matter of law, unexplained invalid findings cannot be given any weight and, thus, such findings ultimately should not be used.

---

[10] The rule was amended in 1997. *See* OAR 436-035-0007(28). The amended—and now differently numbered—rule does not apply to this claim because the claim was closed before the amended rule's effective date. OAR 436-035-0003(1).

Employer's first argument—that the Board abdicated its responsibility to weigh the medical evidence—simply misunderstands the basis for the Board's adoption of the ALJ's order. In its order on reconsideration, the Board specifically observed: "It is evident from the ALJ's order that the medical opinions were weighed and the ALJ relied on the most persuasive opinion, rather than automatically relying on the arbiters' report." The Board's description of the ALJ's order and reasoning process is accurate.[11] Thus, in adopting the ALJ's order, the Board performed the weighing process that employer believes it must; it did not feel bound by the rule automatically to rate claimant's disability using the impairment findings in the arbiter panel's report. Employer's argument in that regard therefore is without merit.

██  The more significant issue raised by employer is whether an arbiter's impairment findings may be used at all in rating the disability when the arbiter concludes that the examination was invalid but does not explain the invalidity. We recently held that *former* OAR 436-035-0007(27) (1996) itself precluded use of invalid impairment findings if the invalidity was based on a determination that an impairment finding does not satisfy AMA criteria. *Roseburg Forest Products v. Clemons*, 169 Or App 231, 9 P3d 123 (2000). When the Board decided this case, it did not have the benefit of that opinion, and it incorrectly understood the rule to *require* consideration of the arbiter panel's impairment findings, notwithstanding their invalidity, if the invalidity was not explained. *See Justeen L. Parker*, 49 Van Natta 334 (1997) (so holding; cited by the Board in its order in this case). Although employer does not attack that predicate assumption directly, its challenge to the use of the arbiter panel's impairment findings for rating the disability invites us to follow an alternative path to the same conclusion. Correctly, however, the starting point should be whether the rule itself

---

[11] In her order, the ALJ specifically compared the treating physician's finding that there was no lost range of motion to the measurements made by the arbiter panel. The ALJ explained that the treating physician did not explain what, if any, measurements he made, whereas the arbiters gave precise measurements that were both specific and closer in time to the reconsideration process. Finding those measurements to be "a better measure of claimant's actual range of motion," the ALJ used them in rating the disability.

permits the impairment findings to be used.[12] That is a determination that the Board should make in the first instance, consistent with our decision in *Roseburg Forest Products*. We therefore reverse and remand to the Board for further consideration under a correct interpretation of *former* OAR 436-035-0007(27) (1996).

Reversed and remanded.

---

[12] *See generally Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997) (court is responsible for identifying the correct interpretation of a statute); *Bronson v. Moonen*, 270 Or 469, 476-77, 528 P2d 82 (1974) (administrative rules and regulations have the status and effect of law); *State v. Williams*, 161 Or App 111, 116, 984 P2d 312 (1999) (under *Stull*, we are not bound by the parties' formulation of the issues presented if it would force us to misapply or misinterpret a statute).