Argued and submitted January 3, reversed and remanded for reconsideration
August 8, 2001

In the Matter of the Compensation of
John W. Wantowski, Claimant.

John W. WANTOWSKI,
*Petitioner,*

*v.*

CROWN CORK & SEAL
and CIGNA Insurance Company,
*Respondents.*

98-08420, 98-07743; A108424

29 P3d 1165

Nicholas M. Sencer argued the cause and filed the brief for petitioner.

Vera Langer argued the cause for respondents. With her on the brief was Scheminske & Lyons, LLP.

Before Haselton, Presiding Judge, and Wollheim, Judge, and Lipscomb, Judge pro tempore.

WOLLHEIM, J.

Lipscomb, J. pro tempore, concurring.

**WOLLHEIM, J.**

Claimant seeks review of an order of the Workers' Compensation Board that upheld employer's denial of claimant's aggravation claim for a low back condition. After the Board issued its decision, the Supreme Court established a different test for determining whether an injured worker's compensable condition actually worsened. *See SAIF v. Walker*, 330 Or 102, 996 P2d 979 (2000). Accordingly, we reverse and remand for reconsideration.

The facts are uncontested. Claimant worked for employer for over 30 years. Between 1976 and 1996, claimant filed a series of workers' compensation claims, each accepted by employer. As a consequence of claimant's compensable workplace injuries, claimant underwent six separate lumbar spinal surgeries. The last sequence of claims included a February 1993 L4-5 disc herniation claim. Following surgery to remove extruded disc material, the claim was closed in July 1994 with an award of 12 percent unscheduled permanent partial disability (PPD) for claimant's low-back injury and 5 percent scheduled PPD for loss of use or function in his right foot. In March 1996, claimant filed, and employer accepted, an aggravation claim for a recurrent L4-5 disc herniation that resulted in further surgery to repair the injury. The aggravation claim was closed in April 1997 and, in September 1997, an order on reconsideration awarded claimant 12 percent unscheduled PPD for his low-back injury.

In April 1998, claimant experienced an acute back strain and returned to his attending physician, Dr. Schmidt. Claimant's strain improved slightly after that visit. However, claimant returned to Schmidt in June 1998 complaining of increased pain in his low back, pain in his right leg and calf, and numbness in his right big toe. Schmidt's file notes from that appointment reveal that claimant's right knee jerk was diminished and that both ankle jerks were absent. Schmidt also noted that claimant developed pain at 45 degrees of straight-leg raising on the right. Schmidt ordered diagnostic testing that included an MRI, a CT scan and an x-ray.

Claimant then underwent a compelled medical examination (CME) that was requested by employer pursuant to ORS 656.325(1)(a).[1] The CME physicians reported a waxing of claimant's symptoms but concluded that no objective evidence existed of an actual worsening of claimant's condition.

After examining claimant's test results, Schmidt referred claimant to Dr. Waldram, a surgeon, to explore the possibility of lumbar fusion surgery. Waldram's physical exam revealed that claimant had a limited back range of motion as well as some dysesthesias and decreased sensation in his right foot.[2] Waldram also noted that claimant's diagnostic tests indicated that claimant suffered from severe degenerative changes at L4-5 and L5-S1 with laminectomy defects at both levels. Waldram concluded that claimant's only reasonable chance of improvement would come through a fusion.

Employer denied claimant's aggravation claim in September 1998. The administrative law judge (ALJ) affirmed the denial. In the opinion and order, the ALJ explained:

"Claimant has not worked since August and may well be less able to work in the broad field of general occupation without undergoing the fusion recommended by [Waldram]. However, I am unable to find objective evidence to support an actual worsening of claimant's compensable condition.

"* * * Now, according to his history, he is unable to work without [a fusion]. Claimant may be worse, but this is based only on what he says, not on objective findings.

"Both [Waldram] and [Schmidt] concurred with letters written by claimant's counsel which stated that there was an objective basis for an actual worsening of claimant's condition. However, when [Schmidt's] deposition was taken, his testimony was not consistent with that concurrence.

---

[1] *Robinson v. Nabisco, Inc.*, 331 Or 178, 181, 11 P3d 1286 (2000).

[2] *Stedman's Medical Dictionary*, 431 (23rd ed 1976), defines "dysesthesia" as "1. Impairment of sensation short of anesthesia. 2. A condition in which a disagreeable sensation is produced by ordinary stimuli."

Claimant's neurological findings are not worse, and diagnostic testing does not support a finding of worsening. Claimant's range of motion reduction is equivocal. In concluding that claimant is worse, his physicians have relied on his complaints of increased pain and numbness. Claimant's physicians believe claimant. So do I. However, these are not objective findings to support a conclusion of an actual worsening of claimant's condition even if his symptoms have worsened sufficiently to conclude that his condition has worsened. [*SAIF v. Walker*], 145 Or App 294[, 930 P2d 230] (1996). Consequently, claimant has failed in his burden of proof and the denial must be affirmed."

On reconsideration, the ALJ disagreed with claimant's description of the holding in *Walker*, noted that *Walker* did not explicitly address the objective findings requirement for aggravation claims, and explained that he rejected the MRI results as not constituting objective findings because the post-operative changes identified by those results could not be dated. On review, the Board adopted and affirmed the ALJ's order with one minor factual addition.

On judicial review, claimant assigns as error the Board's conclusion that claimant's physicians improperly relied upon claimant's worsened symptoms in determining that claimant's condition had actually worsened and determined that there were no objective findings to support a conclusion that claimant's condition had actually worsened. Claimant argues that, after the Board reached its conclusion, the Supreme Court issued *Walker,* which established a different test for aggravation claims from the one followed by the Board. *Walker*, 330 Or at 105. In addition, claimant argues that there are sufficient objective findings in the record to support his physicians' conclusions that claimant's condition has actually worsened. Employer argues that the Board correctly concluded that claimant failed to establish a compensable aggravation claim. Specifically, employer contends that claimant failed to prove a symptomatic worsening by medical evidence supported by objective findings and that the Board's conclusion that there were no objective findings to support the aggravation claim is supported by substantial evidence.

We review the Board's legal determinations for errors of law. ORS 183.482(7). At issue here is whether the

Board applied the correct test when it denied claimant's aggravation claim.

ORS 656.273 describes the aggravation claim:

"(1)   After the last award or arrangement of compensation, an injured worker is entitled to additional compensation for worsened conditions resulting from the original injury. A worsened condition resulting from the original injury is established by medical evidence of an actual worsening of the compensable condition supported by objective findings. * * *

"* * * * *

"(3)   * * * The claim for aggravation must be accompanied by the attending physician's report establishing by written medical evidence supported by objective findings that the claimant has suffered a worsened condition attributable to the compensable injury."

"Objective findings" is defined in ORS 656.005(19):

" 'Objective findings' in support of medical evidence are verifiable indications of injury or disease that may include, but are not limited to, range of motion, atrophy, muscle strength and palpable muscle spasm. 'Objective findings' does not include physical findings or subjective responses to physical examinations that are not reproducible, measurable or observable."

*See also SAIF v. Lewis*, 170 Or App 201, 12 P3d 498 (2000), *rev allowed* 331 Or 692 (2001).

In *Walker*, we interpreted the relevant language of ORS 656.273(1) and concluded that the legislature did not intend for the term "actual worsening" to include symptomatic worsening and that proof of a *pathological* worsening was required to sustain an aggravation claim. 145 Or App at 305. That was the test applied by the Board. However, after the Board's order, and before our review here, the Supreme Court reviewed our *Walker* decision, and it established a substantially different test for aggravation claims. The Supreme Court said that "evidence of a symptomatic worsening may support a physician's conclusion that the underlying compensable condition itself has worsened." *Walker*, 330 Or at 105.

Specifically, the Supreme Court noted that recent amendments to ORS 656.273 did "not limit the admissibility or relevance of competent evidence of worsened symptoms or their disabling effects." *Id.* at 117-18. It further explained:

"What the 1995 amendments to ORS 656.273(1) introduced was the requirement that a worker prove, through medical evidence supported by objective findings, that the compensable condition itself actually has worsened. In that context, evidence of worsened symptoms, while relevant, is not sufficient by itself to meet the proof standard created by ORS 656.273(1) (1995). However, because evidence of worsened symptoms is relevant to the question whether the compensable condition actually has worsened, and might in some cases be the best evidence regarding that fact, a physician may rely upon that kind of evidence in determining whether the compensable condition has worsened and in opining on that question to the factfinder or to the Board. In other words, the 'medical evidence * * * supported by objective findings' that is required under ORS 656.273(1) (1995) and ORS 656.273(3) to prove an 'actual worsening of the compensable condition' may include a physician's written report commenting that the worker's worsened symptoms demonstrate the existence of a worsened condition." *Id.* at 118.

In *SAIF v. January*, 166 Or App 620, 998 P2d 1286 (2000), we explained our understanding of the standard set forth by the Supreme Court in *Walker*. We explained that

"a symptomatic worsening may meet the proof standard for an actual worsening if a medical expert concludes that the 'symptoms demonstrate the existence of a worsened condition.' [*Walker*, 330 Or at 118.] To be sure, evidence of a symptomatic worsening, in and of itself, does not permit a factfinder to infer an actual worsening. But if *medical* evidence—*i.e.*, a physician's expert opinion—establishes that the symptomatic worsening represents an actual worsening of the underlying condition, then such evidence may carry the worker's burden. That is precisely the opinion that claimant's treating physician provided in this case. Whether that opinion is persuasive was for the Board to determine. But in all events, a medical expert's opinion that an increase of symptoms signifies an actual worsening of a

particular compensable condition satisfies the actual worsening standard." *January*, 166 Or App at 624 (emphasis in original; citations omitted).

Here, the Board did not consider the medical opinions of Schmidt and Waldram that the increase in claimant's symptoms indicated an actual worsening of his condition. Instead, the Board relied solely on objective findings in the record—findings that even Schmidt conceded could not independently satisfy the actual worsening standard. That approach was inconsistent with the Supreme Court's opinion in *Walker* and our opinion in *January* and constituted legal error. Consequently, we reverse and remand for the Board to apply the proper test to determine whether claimant has proven a compensable aggravation claim under ORS 656.273(1).

Employer raises the issue of whether there were any objective findings to support an actual worsening of claimant's compensable condition. The Board found none. Although the Board's order addressed why it discounted the MRI and range of motion test results, it failed to explain why the results of the x-ray and CT scan, straight leg test, knee-jerk test and claimant's documented numbness in his right toe and foot did not constitute objective findings under ORS 656.005(19). Consequently, we are unable to adequately review the Board's conclusion that no objective evidence supported claimant's aggravation claim. *Iles v. Fred Meyer, Inc.*, 173 Or App 254, 21 P3d 195 (2001). On remand, if the Board makes a similar finding, it needs to provide a sufficient explanation why evidence that in other contexts constitutes objective findings does not satisfy the requirements of ORS 656.005(19) in this instance.

Reversed and remanded for reconsideration.

**LIPSCOMB, J.,** pro tempore, concurring.

The result we reach today is legally correct, and therefore I concur. However, the process, I submit, needs some adjustment.

The record indicates that claimant needs a surgical fusion. The record further indicates that he has been unable to work until he gets the surgery he needs. A notice of claim

for aggravation was filed June 28, 1998. The employer's denial in this case was issued on September 23, 1998. The administrative law judge (ALJ) issued an order on April 1, 1999. His subsequent order on reconsideration is dated June 10, 1999. The Board, in turn, reviewed the decision of the ALJ and issued its order on review on November 4, 1999. We now reverse the Board's order on review, and remand for reconsideration and a new determination by the Board.

One of the underlying public policy justifications for our workers' compensation system was to provide for a prompt determination of claims as an alternative to "long and costly litigation." *See* ORS 656.012(b). It has already taken more than three years to get to this juncture, however, and claimant has yet to receive a final answer on his claim. There is no reason that the review process for our workers' compensation system cannot function better than this, particularly where, as here, the issues are relatively simple and straightforward.

That review process necessarily involves multiple institutions and several stages, and this court is only one part of the entire system of review. However, much of the delay between, and within, those several stages could be, and should be, eliminated wherever it may appear.