Argued and submitted June 26, affirmed August 28, 2002

In the Matter of the Compensation of
Barbara J. McGuire, Claimant.

## SISTERS OF PROVIDENCE,
*Petitioner,*

*v.*

## Barbara J. McGUIRE,
*Respondent.*

00-04322 and 00-02303; A113375

52 P3d 1113

James W. Moller argued the cause for petitioner. On the briefs were Vera Langer and Scheminske & Lyons, LLP.

Charles Robinowitz argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Brewer and Schuman, Judges.

SCHUMAN, J.

**SCHUMAN, J.**

The Workers' Compensation Board (board) awarded claimant temporary disability benefits and permanent partial disability benefits. Sisters of Providence, claimant's employer, seeks judicial review. We affirm.

The following facts, found by an administrative law judge (ALJ) and adopted by the board, are undisputed.

Claimant worked for employer as a parking attendant and valet. Her duties included helping disabled people into and out of their vehicles and helping them move from the vehicles to and from employer's building. On August 5, 1999, while at work, claimant was knocked to the ground by an automobile moving approximately 15 to 20 miles per hour. She suffered what the treating physician called "low back strain and contusion" and spent two days in a hospital. Her pain did not abate, so she sought treatment from a physician who, on August 27, 1999, reviewed X-rays, recommended massage, but did not make a medical diagnosis. A month later, another physician, Dr. Datena, diagnosed "a lot of soft tissue type injuries" and authorized her return to light duty work. On October 25, 1999, employer accepted her claim for a disabling right low back contusion.

Claimant's low back pain continued, as did pain radiating down her legs. In November, she returned to Datena. He wrote that the "radicular symptoms" resulted from "excessive activity and lifting while at work," released claimant to modified work, and prescribed medication and physical therapy.

Shortly thereafter, on November 3, 1999, and January 3, 2000, claimant underwent two employer-mandated medical exams (CMEs)[1] where she was examined by a total of

---

[1] Generally, claimants' attorneys refer to a "compelled medical examination," or CME, while insurers' and employers' attorneys refer to an "independent medical examination," or IME. The title of ORS 656.325 uses the term "required medical examination," and in OAR 436-010-0265 the acronym IME stands for "insurer medical examination." Our usage has not been consistent. *Compare Wantowski v. Crown Cork & Seal*, 175 Or App 609, 612, 29 P3d 1165 (2001) (CME), *with Seeley v. Sisters of Providence*, 179 Or App 723, 725, 41 P3d 1093 (2002) (IME, standing for "independent medical examination"). In this case, we use CME because that is what the Supreme Court used in *Robinson v. Nabisco, Inc.*, 331 Or 178, 181, 11 P3d 1286 (2000).

six employer-chosen physicians. All agreed that claimant was medically stationary and could return to her regular work, and all agreed that she experienced pain, although one physician believed that the pain did "not have organic causes." Two of the physicians reported limited range of motion but believed that the limitation was not due to the accepted low back condition.

On January 4, 2000, a physician's assistant in Datena's office treated claimant; his report indicated that she continued to experience low back pain radiating into her legs.

Employer then began the claim closure process. Under ORS 656.245(2)(b)(B), "only the attending physician at the time of claim closure may make findings regarding the worker's impairment for the purpose of evaluating the worker's disability." However, findings in which the attending physician concurs are considered the attending physician's and can also be used. OAR 436-035-0007(13). Therefore, in order to make the CME opinions usable in the claim closure, employer, on January 18, 2000, wrote Datena in his capacity as claimant's attending physician, asking him to concur. However, the next day, without waiting for Datena's response, employer issued a Notice of Closure, awarding claimant temporary disability benefits but no permanent partial disability (PPD).

On January 20, 2000, the day after this claim closure, a person in Datena's office who identified herself only as "Sherry" returned employer's letter that had requested confirmation of the CME reports. The "check the box" spaces next to the sentences, "YES, I do agree with the [CME] reports," and "NO, I do not agree with the reports," were both blank. In the space for "COMMENTS," Sherry wrote the cryptic message: "Per letter 12/7/99. Dr Datena is no longer treating MD due to Or Wk Comp Law—a Prov MCO physician should handle closing." No letter dated "12/7/99" is in the record. Nor does anything indicate why employer asked Datena whether he concurred with the CME reports and then closed the claim the next day without hearing from him, or whether employer, after issuing the claim closure, made any further attempts to discover who, if anybody, claimant's

new attending physician was and whether he or she agreed with the CME reports.

Claimant requested reconsideration of the disability findings contained in the Notice of Closure. Pursuant to ORS 656.268(5)(c), the Appellate Review Unit (ARU) of the Department of Consumer and Business Services (DCBS) appointed a medical arbiter, Dr. Berselli. He examined claimant on May 3, 2000, and reported that he suspected she had radiculopathy (a "[d]isorder of the spinal nerve roots," *Stedman's Medical Dictionary*, 1503 (27th ed 2000)). He requested permission from DCBS to have her tested. DCBS refused. He then issued a follow-up report describing the range-of-motion impairment he had found and stating that it was "due to the accepted condition." Based on that report, the ARU issued an Order on Reconsideration granting claimant 13 percent unscheduled PPD for range of motion impairment in her low back. The order also modified the award of temporary disability by shifting the termination date from December 9, 1999 (the date employer used) to January 3, 2000 (the date the physicians determined claimant was medically stationary).

Employer appealed, arguing that the CME reports (indicating claimant was ineligible for PPD) were more persuasive than the medical arbiter report. The ALJ, however, concluded that the CME reports were not "legally available" due to ORS 656.245(2)(b)(B), which, as noted above, precludes the use of any medical reports except those made by or concurred in by an attending physician or, under an explicit exception to that statute, a medical arbiter. The ALJ also rejected employer's argument that the medical arbiter's findings of impairment caused by the injury were not sufficiently supported by evidence in the record and its argument that the termination date for claimant's temporary disability was properly December 9, 1999. Employer appealed to the board, and the board affirmed. Employer now seeks judicial review.

As its first assignment of error, employer argues that the board improperly refused to consider the CME reports in determining the extent of claimant's PPD. The

argument proceeds as follows. ORS 656.245(2)(b)(B) provides, in part:

"Except as otherwise provided in this chapter, only the attending physician at the time of claim closure may make findings regarding the worker's impairment for the purpose of evaluating the worker's disability."

A relevant exception "provided in this chapter" derives from ORS 656.268(5)(c), (6)(f) and (7)(a), dealing with claim closure. Under those provisions, when a worker seeks reconsideration of the impairment rating in a claim closure, the director of DCBS appoints a medical arbiter, whose report may also be used in the reconsideration. Further, as we have noted above, medical findings in which an attending physician concurs are considered the attending physician's and can also be considered. Under the relevant statutes, then, in a proceeding to reconsider a claim closure, the only admissible medical opinions regarding impairment are those made or adopted by the attending physician and those made by an appointed medical arbiter or arbiters.

However, according to employer, OAR 436-035-0007(13) qualifies this statutory scheme. That rule permits the use, in some circumstances, of other medical opinions and reports, including, presumably, those produced by CME physicians. The rule provides, in part:

"If an attending physician's findings or comments are unavailable or incomplete, impairment may be established by the preponderance of medical evidence."

That rule, according to employer, applies in this case. Employer argues that, at the time of closure, claimant had no attending physician, so his or her findings or comments were unavailable or incomplete. Therefore, under OAR 436-035-0007(13), the CME physicians' impairment findings could have been used at closure despite ORS 656.245(2)(b)(B) and ORS 656.268(5)(c), (6)(f) and (7)(a). The fact that they could have been used at closure necessarily implies that they could also have been used in reconsideration of the closure by the ARU. Thus, the ALJ and the board erred in ruling that the CME physicians' reports were "legally unavailable."

■■ Employer's entire argument rests on its interpretation of OAR 436-035-0007(13). To avail itself of that rule and the exception it supposedly creates to the statutory limitation on medical evidence that can be used to determine impairment, employer had to demonstrate the unavailability or incompleteness of findings or comments from an attending physician. *Marvin Wood Products v. Callow*, 171 Or App 175, 183, 14 P3d 686 (2000) (although the worker has the burden of proof with respect to facts that go to the nature and extent of his or her injury, the party challenging the ARU's conclusion has the burden of demonstrating that the ARU misapplied DCBS standards). Employer's only evidence to that effect was the January 21 note from Datena's office stating, "Per letter 12/7/99, Dr Datena is no longer treating MD due to Or Wk Comp Law—a Prov MCO physician should handle closing." That note establishes only that, as of January 21, 2000, Datena was not claimant's attending physician. That is a far cry from demonstrating an absence of complete physicians' findings or comments. The record contains several reports from Datena, whom employer treated as claimant's attending physician until at least January 21, and his associates acting on his behalf; comments from an attending physician are not therefore "unavailable." Nor does employer make any argument or present any evidence that the available reports are "incomplete." A reasonable person viewing the whole record could conclude that employer failed to produce persuasive evidence that it qualified for the exception allowing it to use CME reports in determining PPD. Therefore, the board did not err in affirming the ARU and ALJ. *Armstrong v. Asten-Hill Co.*, 90 Or App 200, 206, 752 P2d 312 (1988).

■ In its second assignment of error, employer attacks the sufficiency of the evidence supporting the board's conclusion that claimant's impairment was caused by the injury. Because that assignment raises an issue regarding the weight to be given facts going to the compensability, nature, and extent of claimant's injury, claimant had the burden of proof. ORS 656.266; *Marvin Wood Products*, 171 Or App at 183. We review to determine whether a reasonable person viewing the record as a whole could conclude that claimant met that burden. *Armstrong*, 90 Or App at 206.

■        The board relied on the medical arbiter's report, which stated, in part:

"1.   The findings, in my opinion, are due to the accepted condition.

"2.   The patient has a partial loss of ability to repetitively use the lumbar spinal area due to the diagnosed chronic and permanent medical condition which arose out of the accepted condition. The diagnosis is chronic low back pain with the possibility of right-sided lumbar nerve root pressure.

"3.   These findings are not considered to be invalid.

"4.   The patient's residual functional capacity is as follows: [there follows a summary of limitations on claimant's ability to lift-carry, sit, stand, walk, stoop, crawl, twist, crouch and kneel]. However, she has no permanent restrictions that would prevent her from working the same number of hours that were worked prior to the injury."

Based on this information, the board reasoned as follows: The medical arbiter stated generally in the first numbered paragraph that claimant's objectively verifiable impairment is caused by the accepted condition, a low back contusion. More particularly, the arbiter stated his belief in the second numbered paragraph that the contusion gave rise to chronic back pain, possibly accompanied by radiculopathy, and that the pain, in turn, caused the impairment. In other words, the arbiter concluded that the impairment is consistent with the accepted condition caused by the injury. That conclusion, coupled with the fact that no legally available medical findings suggest an alternate cause, suffices to establish the connection between the injury and the impairment. *SAIF v. Danboise*, 147 Or App 550, 553, 937 P2d 127, *rev den* 325 Or 438 (1997).

Employer, however, maintains that one link in the board's chain of reasoning is fatally weak: the link between the accepted condition of a low back contusion and the immediate cause of impairment—chronic low back pain possibly accompanied by radiculopathy. According to employer, the evidence does not support the inference that the injury caused chronic back pain possibly accompanied by radiculopathy. We disagree.

The medical arbiter's report contains not only objective findings of impairment that are consistent with claimant's accepted condition, it contains the unambiguous statement that the impairment *results from* the condition. The report is a medical opinion, thus satisfying the requirement that "the question of causation is a complex one, requiring expert medical opinion." *SAIF v. Gaffke*, 152 Or App 367, 371, 954 P2d 179 (1998). As we have decided above, the report is the only evidence in the record legally available to the ARU when it determined the extent of claimant's disability. It provides no alternative explanation for it. Substantial evidence supports the board's conclusion. *Danboise*, 147 Or App at 552.[2]

■     In its final assignment of error, employer challenges the board's decision regarding the proper date for terminating claimant's temporary disability benefits. ORS 656.262(4)(g) provides:

> "Temporary disability compensation is not due and payable * * * after the worker's attending physician ceases to authorize temporary disability or for any period of time not authorized by the attending physician."

Employer contends that claimant had no attending physician after Datena withdrew on December 7 and that his withdrawal automatically terminated his authorization. That entire argument rests on the conclusion that Datena did, indeed, withdraw on that date. Employer's sole basis for that conclusion is the message that "Sherry" wrote on the request for confirmation that employer sent Datena on January 18, 2000: "Per letter 12/7/99, Dr Datena is no longer treating MD due to Or Wk Comp Law—a Prov MCO physician should handle closing." Employer asserts that this message "unambiguously shows that [Datena] no longer was claimant's attending physician after December 7, 1999." We disagree.

---

[2] Employer also appears to argue that the board accepted the medical arbiter's conclusion that the accepted condition included radiculopathy. We find nothing in the record supporting that argument. The medical arbiter found only that the injury caused chronic low back pain; his report speculates that this pain "possibly" could be accompanied by lumbar nerve root pressure. Further, neither the ARU, the ALJ, nor the board appears to have misunderstood the medical arbiter to have concluded that the injury caused radiculopathy or that radiculopathy was an accepted condition.

No letter dated "12/7/99" is in the record; we do not know if it was a letter to Datena or from him, nor who his correspondent was, nor what the letter contained. What we do know is that "Sherry's" message does *not* say, or even imply, that the December 7 letter somehow marked the ending date of Datena's tenure as claimant's attending physician. In fact, employer continued to regard Datena as the attending physician beyond that date, and Datena's Physician's Assistant treated claimant on behalf of Datena on January 4. Substantial evidence supports the board's conclusion that employer did not successfully demonstrate that the ARU (and subsequently the board) misapplied DCBS standards in setting January 3, 2000, as the proper ending date for temporary disability benefits.

Affirmed.