Argued and submitted May 18, affirmed December 29, 2011, petitioners' petition for reconsideration filed January 12 allowed by opinion March 14, 2012

See 248 Or App 746, 273 P3d 376 (2012)

In the Matter of the Compensation of
Floyd A. Owens, Claimant.

**SAIF CORPORATION**
and Swanson Group Mfg LLG,
*Petitioners,*

*v.*

Floyd A. OWENS,
*Respondent.*

Workers' Compensation Board
0807105; A145552

270 P3d 343

Julie Masters argued the cause for petitioners. On the briefs was Julene M. Quinn.

Christine Jensen argued the cause for respondent. With her on the brief was Malagon, Moore & Jensen.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

ARMSTRONG, J.

**ARMSTRONG, J.**

The primary question in this workers' compensation case is whether claimant's physician released him to regular work at the job that he held at the time of injury. The answer to that question determines whether claimant is entitled to benefits for "work disability" based on consideration of social, vocational, and adaptability factors. *See* ORS 656.726(4)(f)(E); OAR 436-035-0008(2)(b); *SAIF v. VanBibber*, 234 Or App 68, 71, 227 P3d 1224 (2010) (award of permanent partial disability to a worker who has not been released to regular work includes benefits for work disability). The board held that claimant had not been released to regular work at the job at injury and that he was therefore entitled to benefits for work disability, and SAIF petitions for judicial review.[1] SAIF also challenges the board's determination that, in evaluating claimant's level of impairment, it could not consider two medical reports submitted by employer in support of the attending physician's impairment findings. We conclude that the board did not err in excluding the disputed evidence and that the board's order is supported by substantial evidence; accordingly, we affirm.

The facts are largely undisputed. Claimant was first injured at work in 2002. At that time, claimant was working at employer's mill, "pulling green chain." Employer accepted a claim for disabling cervical and thoracic strain and a fracture at T1. The claim was closed in January 2003, with an award of two percent unscheduled permanent partial disability for the thoracic spine.

In April 2003, employer accepted an aggravation claim for the cervical and thoracic strain conditions. In 2004, employer terminated claimant's employment for reasons unrelated to his injury, and claimant began working as a carpenter.

In May 2005, employer modified its notice of acceptance to include, as a new or omitted medical condition, a disc bulge at C6-7; in July 2006, claimant had a discectomy and fusions at C5-6 and C6-7 to address that condition.

---

[1] We note that SAIF did not become involved in this case until after the board had issued its order.

In August 2007, employer accepted pseudoarthrosis as a new or omitted condition, and claimant had surgery to address that condition in September 2007.

In April 2008, claimant's surgeon, Dr. Gallo, declared claimant to be medically stationary. Gallo described claimant's "job-at-injury" as "journeyman carpenter" and released him to regular work. Claimant's care then shifted to Dr. Weller, his attending physician, who examined claimant on May 9, 2008, and concluded that he could return to his regular work.

On June 12, 2008, employer corresponded with Weller, noting that Weller had reported different cervical ranges of motion than had Gallo. Employer asked Weller to "clarify [claimant's] medically stationary status, release for regular work date and which [range of motion] findings are valid and should be used for the purpose of rating his disability. Please note that information below." On July 13, 2008, in the space provided, Weller wrote: "Pt did have ↻ ROM on my eval. At this time I am treating this as a waxing + waning of symptoms, but am concerned that this may indeed be an aggravation that has evolved since the closing evaluation/ PCE[.]" Employer further asked Weller: "[W]ith regard to his release to work status, [claimant] was pulling Greenchain when he was injured. We need to confirm that 'regular release' means he could return to his job at injury. Dr. Gallo released him to lift over 100 [pounds]. Do you agree?" In the space provided, Weller wrote: "Yes—as I have not determined that there has been an aggravation to his injury yet, he continues to be released to regular work."

Based on Gallo's and Weller's reports, employer closed the claim for aggravation and new or omitted medical conditions, with a total award of 28 percent unscheduled permanent partial disability for the cervical and thoracic spine.

Claimant requested reconsideration of the notice of closure, and Dr. Melson, a neurologist, was appointed as a medical arbiter. Melson examined claimant on September 29, 2008, and noted a marked increase in claimant's symptoms since claimant had been released for work by Gallo

in April 2008. Melson noted reduced ranges of cervical and thoracic motion, significant limitations in repetitive use of the cervical and thoracic spine, weakness and reduced digital dexterity in the left upper extremity, and weakness and altered gait in the left lower extremity. In Melson's view, claimant's symptoms indicated spinal cord involvement, and Melson opined that claimant's fusion had failed. Melson said that claimant should be restricted to sedentary work and that he was precluded from stooping, climbing, crouching, balancing, crawling, reaching, kneeling, twisting, and pushing/pulling.

The Appellate Review Unit (ARU) described Melson's report as thorough and persuasive and concluded that a preponderance of the medical evidence did not establish a different level of impairment.[2] The ARU determined that claimant was eligible for work disability because he had not been released for work for his job at injury—pulling green chain—but rather had been released for work as a carpenter: "The worker had a regular release for a different job than the job at injury and the worker's regular work duties were not available at closure. Accordingly, we find adaptability factoring under OAR 436-035-0012 is appropriate in this review." Based on Melson's report, the ARU issued an order on reconsideration that increased claimant's award to 42 percent unscheduled disability, including a value of eight for "work disability." The ARU also awarded a scheduled disability of 14 percent for the left arm and 48 percent for the left leg.

Employer requested a hearing, challenging, among other things, the ARU's determination that claimant had not been released to his job pulling green chain. The administrative law judge (ALJ) upheld the ARU's determination. Like the ARU, the ALJ credited Melson's report, describing it as

---

[2] OAR 436-035-0007(5) provides:

"Impairment is established based on objective findings of the attending physician under ORS 656.245(2)(b)(C) and OAR 436-010-0280. On reconsideration, where a medical arbiter is used, impairment is established based on objective findings of the medical arbiter, except where a preponderance of the medical evidence demonstrates that different findings by the attending physician are more accurate and should be used."

impressive for its thoroughness and completeness." The ALJ noted that a worker's disability is to be determined as of the date of the reconsideration order. In part because of the changes in claimant's condition subsequent to his examinations by Gallo and Weller, the ALJ found that Melson's opinion as to claimant's disability was more persuasive.

The ALJ considered and rejected employer's contention that the ARU had erred in concluding that claimant had been released to work as a carpenter rather than to his job at injury pulling green chain. In employer's view, Weller's July 13, 2008, concurrence in Gallo's release to regular work indicated agreement with Gallo's recommendation that claimant was released to his regular work at the job at injury. The ALJ rejected that contention, reasoning that, when the record is considered in its entirety, it is clear that Weller's release of claimant was not to work pulling green chain but to work as a carpenter. In any event, the ALJ noted that Melson had suggested a release to sedentary work. The ALJ affirmed the order on reconsideration.

In upholding the ALJ's order, the board addressed, among other issues, whether claimant had been released for regular work for the job at injury. The board found as a preliminary matter that claimant's job at injury was the job that he held when he was first injured in 2002, pulling green chain, a fact that employer does not dispute.

The board then addressed whether claimant had in fact been released to his job at injury—pulling green chain. As claimant's attending physician at the time of closure, Weller was the physician who was authorized to release him for regular work. ORS 656.214(2); ORS 656.726(4)(f)(E). The board noted that, in releasing claimant to work without restrictions, Gallo had mistakenly identified claimant's job at injury as journeyman carpenter. In light of that, the board concluded that Gallo had not released claimant to his job at injury.

The board then noted that, when employer solicited a work release from Weller, it correctly identified claimant's

job at injury as pulling green chain. However, in rejecting employer's contention that Weller's handwritten response to employer's inquiry constituted a release for that type of work, the board explained that Weller had not affirmatively stated that claimant could return to work pulling green chain or indicate that she had evaluated whether claimant could do that work. The board thus interpreted Weller's statement as a continuance of her concurrence in Gallo's work release, not as an independent determination that claimant was released for work pulling green chain. Thus, the board found that claimant had not been released to the job of pulling green chain and was therefore entitled to consideration of social/vocational adaptability factors in the determination of permanent partial disability.[3]

Having concluded that claimant had not been released to his job at injury, the board then evaluated the evidence concerning claimant's level of impairment. As noted, Melson had concluded that claimant's symptoms indicated spinal cord involvement, and from those symptoms, Melson concluded that claimant's fusion had failed. In contending that a preponderance of the evidence showed that Weller's, and not Melson's, opinion of impairment was correct, employer cited two medical opinions, one from Gallo prepared in August 2008, and one from Dr. Lockfelt, prepared in September 2008, before the medical arbiter's examination. Employer asserted that those reports brought into question Melson's opinion that claimant's compensable fusion had failed and thereby undermined his opinion that claimant's new symptoms are related to the compensable condition. The board declined to consider the two additional medical reports for any purpose relating to the evaluation of

---

[3] The board explained:

"When the employer solicited a work release from Dr. Weller, it correctly indentified claimant's job at injury as pulling green chain. However, Dr. Weller did not affirmatively opine that claimant could return to pulling green chain, nor did she indicate that she had independently evaluated claimant's ability to perform such work. Instead, Dr. Weller merely 'continue[d]' Dr. Gallo's work release. * * * Under such circumstances, the record does not persuasively establish that claimant was released to regular work. Therefore, he is entitled to consideration of social/vocational factors in the calculation of his unscheduled PPD."

claimant's impairment, explaining that, pursuant to ORS 656.245(2)(b)(C),[4] ORS 656.268(7),[5] and OAR 436-035-0007,[6] when a case is taken on reconsideration, only the reports of the medical arbiter and the attending physician at the time of closure may be considered in determining the claimant's impairment. The board noted an exception for findings made by other medical providers before the issuance of the medical arbiter's report in which the attending physician concurs. *See*

---

[4] ORS 656.245(2)(b)(C) provides:

"Except as otherwise provided in this chapter, only a physician qualified to serve as an attending physician * * * who is serving as the attending physician at the time of claim closure may make findings regarding the worker's impairment for the purpose of evaluating the worker's disability."

[5] ORS 656.268(7) (2009) provides, as relevant:

"(a) If the basis for objection to a notice of closure issued under this section is disagreement with the impairment used in rating of the worker's disability, the director shall refer the claim to a medical arbiter appointed by the director.

"* * * * *

"(g) The findings of the medical arbiter or panel of medical arbiters shall be submitted to the director for reconsideration of the notice of closure.

"(h) After reconsideration, no subsequent medical evidence of the worker's impairment is admissible before the director, the Workers' Compensation Board or the courts for purposes of making findings of impairment on the claim closure."

[6] ORS 656.726(4)(f)(b) provides:

"Impairment is established by a preponderance of medical evidence based upon objective findings."

In turn, OAR 436-035-0005(13) provides:

" 'Preponderance of medical evidence' or 'opinion' does not necessarily mean the opinion supported by the greater number of documents or greater number of concurrences; rather it means the more probative and more reliable medical opinion based upon factors including, but not limited to, one or more of the following:

"(a) The most accurate history,

"(b) The most objective findings,

"(c) Sound medical principles or

"(d) Clear and concise reasoning."

Further, OAR 436-035-0007(5) provides:

"Impairment is established based on objective findings of the attending physician under ORS 656.245(2)(b)(C) and OAR 436-010-0280. On reconsideration, where a medical arbiter is used, impairment is established based on objective findings of the medical arbiter, except where a preponderance of the medical evidence demonstrates that different findings by the attending physician are more accurate and should be used."

OAR 436-035-0007(6);[7] *Tektronix, Inc. v. Watson*, 132 Or App 483, 485-86, 888 P2d 1094 (1995).[8] The board explained, however, that because Weller, claimant's attending physician at the time of closure, had not concurred in the two additional reports, they could not be considered.

The dissenting board member disagreed, expressing the view that the two additional medical opinions could be considered, because they were not findings of impairment but, rather, supported the impairment findings that had been made by Weller.

On judicial review, employer continues to assert that the record requires the determination that claimant was released to his job at injury, *viz.*, pulling green chain. We have reviewed the medical record in its entirety. In the context of the entire record—and especially in view of the facts that claimant had not worked pulling green chain since 2004, and Weller's earliest records dating from 2006 reflected that claimant worked as a carpenter—we conclude that Weller's handwritten response to employer's inquiry can reasonably be understood to simply reflect a continuance of Gallo's release, which was release to work as a journeyman carpenter. In particular, we note that the inquiry posed to Weller was, again:

> "[W]ith regard to his release to work status, [claimant] was pulling Greenchain when he was injured. We need to confirm that 'regular release' means he could return to his job at injury. Dr. Gallo released him to lift over 100 [pounds]. Do you agree?"

Weller's affirmative reply could thus reasonably be understood to respond to the second part of that inquiry—that is, that Weller agreed with Gallo's release of claimant "to lift

---

[7] OAR 436-035-0007(6) provides:

"Objective findings made by a consulting physician or other medical providers (*e.g.* occupational or physical therapists) at the time of closure may be used to determine impairment if the worker's attending physician concurs with the findings as prescribed in OAR 436-010-0280."

[8] The board noted an additional exception for *nonmedical* evidence relating to impairment. *Libbett v. Roseburg Forest Products*, 130 Or App 50, 52, 880 P2d 935 (1994), *rev den*, 320 Or 507 (1995) (concluding that surveillance tapes of the claimant could be considered in the evaluation of medical evidence of the claimant's disability).

over 100 [pounds]," and, as the board explained, not an indicat[ion] that she had independently evaluated claimant's ability to perform [pulling green chain] work." On this record, the board reasonably could conclude, as it did, that "Dr. Weller merely 'continue[d] Dr. Gallo's work release.' " We conclude, therefore, that the board reasonably interpreted Weller's handwritten responses not to be a release for work pulling green chain. Thus, the board's finding is supported by substantial evidence. *See VanBibber*, 234 Or App at 78; *Hicks v. SAIF*, 196 Or App 146, 100 P3d 1129 (2004). We therefore affirm the board's determination that claimant was not released for regular work to his job at injury and is entitled to consideration of "work disability."

We turn to the question whether the board erred in excluding from the record two medical reports submitted by employer. Employer does not dispute that, under ORS 656.245 and ORS 656.268(7), and *Koitzsch v. Liberty Northwest Ins. Corp.*, 125 Or App 666, 670, 866 P2d 514 (1994), only the impairment findings of the medical arbiter and the attending physician may be considered in determining a claimant's impairment. Employer continues to assert, however, that the board erred in concluding that the two additional medical opinions could not be used to show that there were flaws in Melson's impairment findings and that those findings were not supported by a preponderance of the medical evidence. Employer contends that, contrary to the board's understanding, *Koitzsch* does not preclude consideration of any additional medical evidence for that purpose; rather, employer contends, *Koitzsch*—which was about the admissibility of an independent medical examination—only precludes consideration of independent medical examinations to impeach impairment findings of the attending physician or the medical arbiter.

Employer contends further that where, as here, the issue in dispute is not the *rating* of impairment, but the conditions to be rated, the additional evidence is admissible for the purpose of showing by a preponderance of the evidence that claimant's symptoms are not attributable to a failed fusion and that, therefore, any impairment resulting from claimant's new symptoms is not related to the compensable condition and is not ratable.

Claimant responds that the board correctly limited the record on reconsideration to the medical arbiter's report and the attending physician's report, and that substantial evidence supports the board's finding that the arbiter's report is more persuasive because it is more thorough and was issued closer to the date of reconsideration.

Thus, the issue before us is the scope of the restriction or limitation on the use of medical evidence relating to impairment. Do the statutes and administrative rules merely restrict who may submit impairment findings, as employer contends, or do they also prohibit consideration of outside medical evidence other than the medical arbiter and the attending physician in the weighing of evidence and determination of impairment? Specifically, pursuant to OAR 436-035-0007(5), can physicians' reports other than those of the medical arbiter or those made or adopted by the attending physician be considered for the purpose of determining whether "a preponderance of the medical evidence demonstrates that different [impairment] findings by the attending physician" are more persuasive?

We certainly have suggested in *dicta* in several opinions that medical evidence of the type at issue here cannot be considered. In *Koitzsch*, the claimant sought to be compensated for a loss of sensation that she asserted was caused by her compensable carpal tunnel syndrome. The claimant's attending physician found that the claimant suffered from a total loss of sensation. The employer's physician, Dr. Nathan, found that the claimant's disability was only partial. The board, in affirming the ALJ, held that, although Nathan's opinion could not be relied upon as a basis for the disability award because he was not the claimant's attending physician, his impairment findings could nonetheless be used to impeach or support the findings of the attending physician. 125 Or App at 669. Citing legislative history, we rejected the contention, explaining:

"Those [legislative history] references indicate that the legislature intended to eliminate Board reliance on independent medical examinations as a basis for its evaluation of a worker's disability. The objective of the statute was to save employers the cost of such examinations and to require the Board to consider only the attending physician's

impairment findings in evaluating a disability. The Board's interpretation defeats that objective, because it invites employers to pay for independent medical examinations that might develop findings that employers could use to impeach the attending physician's findings. The legislature intended to eliminate the incentive to incur those costs.

"We recognize the distinction between offering an independent medical examiner's impairment findings for impeachment, rather than as proof of employer's factual contention regarding the extent of impairment. However, the statute does not make that distinction. An independent medical examiner's impairment findings that the employer offers for impeachment are, nonetheless, findings regarding the worker's impairment that evaluate the disability. The legislature intended to permit only the attending physician to make such findings. The Board violated ORS 656.245(3)(b)(B) by receiving and considering the impairment findings of an independent medical examiner."

*Id.* at 670.[9] Thus, in *Koitzsch*, we concluded that evidence of impairment findings from an independent medical examiner could not be considered at all, not even for impeachment purposes.

It is true, as employer contends, that *Koitzsch* only addressed independent medical examinations. However, since *Koitzsch*, we have considered several times the scope of the record on reconsideration in the rating of impairment and have applied *Koitzsch*'s principles to other contexts. In *Hicks v. SAIF*, 194 Or App 655, 659, 96 P3d 856, *adh'd to on recons*, 196 Or App 146, 100 P3d 1129 (2004), we held that the board is not free to reject a medical arbiter's opinion of impairment if it is the only opinion of impairment and unambiguously attributes the claimant's permanent impairment to the compensable condition. We explained that, under ORS 656.268(7), when a case is on reconsideration, the board must accept the opinion of the medical arbiter, unless the other medical opinion" establishes a different level of impairment. 194 Or App at 659. Citing ORS 656.245(2)(b)(B) and *Koitzsch*, we said that "other medical opinion" "may come from findings

---

[9] We note that, at the time *Koitzsch* was decided, ORS 656.268(7) also permitted consideration of impairment findings by the medical arbiter on reconsideration.

of the attending physician or physicians with whom the attending physician concurs." *Id.*

In *Sisters of Providence v. McGuire*, 183 Or App 503, 508, 52 P3d 1113 (2002), in rejecting the employer's contention that the board erred in failing to consider two "compelled medical examinations" when determining the claimant's disability, we said that, on reconsideration of claim closure, "the only admissible medical opinions regarding impairment are those made or adopted by the attending physician and those made by an appointed medical arbiter or arbiters." *Id.*

In *Tektronix, Inc.*, 132 Or App at 486, we explained that, when a medical arbiter is appointed,

> "the record correctly before the referee, the Board and the court * * * includes the reports that claimant's attending physician issued before the medical arbiter's report, the medical arbiter's report, and any report related to impairment that is ratified by the attending physician before the medical arbiter's report."

*See also Libbett*, 130 Or App at 52 (citing *Koitzsch* in support of statement that purpose of statutory restriction that "only the attending physician at the time of claim closure may make findings regarding the worker's impairment" is to eliminate board's reliance on independent medical examinations *for any purpose* in its evaluation of a worker's disability).

Thus, we have on many occasions said that, in the context of a reconsideration of a claimant's impairment, the limitation on the scope of the record to the opinions of the medical arbiter and the attending physician applies not only to direct findings of impairment but to other medical evidence offered in the context of an evaluation of a worker's disability. We adhere to those previous interpretations of the statutes and administrative rules. Considered together, ORS 656.245(2)(b)(C), ORS 656.268(7), and OAR 436-035-0007(5) and (6), go beyond a mere limitation on whose impairment findings may be considered, but also limit the medical evidence that may be considered in determining a claimant's impairment.

Employer points out that ORS 656.726(4)(f)(B), which provides that "[i]mpairment is established by a preponderance of medical evidence based on objective findings," does not place any restriction on the type of medical evidence that may be considered in evaluating a preponderance of the evidence. In employer's view, a rational distinction can and should be made between the type of evidence permitted for findings of impairment and the type of evidence that may be considered for the purpose of determining whether those findings are supported by a preponderance of the evidence. We agree with employer that, in the abstract, ORS 656.726(4)(f)(B) does not limit the type of medical evidence that may be evaluated as a preponderance of the medical evidence, but we conclude nonetheless that that standard must be viewed in the context of ORS 656.245(2)(b)(C), ORS 656.268(7), and OAR 436-035-0007(5) and (6), and our prior case law as described above. In applying the "preponderance of medical evidence" standard to determine a claimant's impairment rating, the entire universe of medical evidence that may be considered consists of the medical arbiter's report, ORS 656.268(7); OAR 436-035-0007(5), the opinion of the attending physician, ORS 656.245(2)(b)(C), and any physicians' report in which the attending physician concurs, OAR 436-035-0007(6). As we said in *Koitzsch*, employer's interpretation would defeat the legislature's intention in enacting ORS 656.245(2)(b)(C) to eliminate incentives for insurers to incur costs for medical examinations aimed at undermining the opinion of the attending physician or, in this case, the medical arbiter.

We reject without discussion SAIF's contention in its first assignment of error that the board erred in awarding additional permanent partial disability based on a redetermination of disability because the record lacks medical evidence of an actual worsening of claimant's condition at the time of claim closure.

Affirmed.